IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

<pre>
                              *
PERDUE FARMS, INC.
                              *
     Plaintiff,
                              *
v.                                  CIVIL NO.: WDQ-04-3404
                              *
UNITHERM FOOD SYSTEMS
                              *
     Defendants.
                              *

*    *    *    *    *    *    *    *    *    *    *    *    *
</pre>

MEMORANDUM OPINION AND ORDER

Perdue Farms Incorporated ("Perdue") has sued Unitherm Food
Systems Incorporated, ("Unitherm") for a declaratory judgment
pursuant to 28 U.S.C. § 2201 *et seq*.  Pending is Unitherm's
motion to dismiss or in the alternative transfer venue and
Perdue's motion to conduct jurisdictional discovery.  For the
following reasons, Unitherm's motion to dismiss for lack of
personal jurisdiction will be granted, and Perdue's motion to
conduct jurisdictional discovery will be denied.


I.  Background

Unitherm is an Oklahoma based manufacturer of specialized
food processing equipment.  Mot. to Dismiss, p. 1-2.  Unitherm is
the owner of U.S. Patent No. 6,675,589 (the "589 Patent") for a
"Freeze Crusting Process" by which the outer layer of a food

1

product "log" (i.e. chicken or turkey) is frozen for uniform slicing.  *Id* at 2.

Perdue is a Maryland based poultry company that crust-freezes food product logs at its Bridgewater, Virginia processing plant.  *Id* at 2.  Perdue has not purchased Unitherm's crust-freezing equipment or a license to use Unitherm's patented technology.  Complaint, ¶ 8.

In May 2004, Unitherm President David Howard ("Howard") sent letters and made phone calls to Perdue employees and lawyers in Virginia and Maryland requesting information about Perdue's use of a freeze-crusting process; he also offered to license Unitherm's patented technology.  Complaint, ¶¶ 9-16.  Perdue declined to purchase a license for the 589 Patent and sued Unitherm in this Court on October 21, 2004.  Mot. to Dismiss, p. 3.

Perdue's complaint seeks a declaratory judgment that: 1) the 589 Patent is invalid; 2) Perdue has not infringed the 589 Patent; and 3) the 589 Patent is unenforceable because freeze crusting devices and processes were available when Unitherm applied for its patent.  Complaint, ¶¶ 17-27.  The Complaint was not served on Unitherm.  Mot. to Dismiss, p. 3.  Instead, Perdue offered to purchase a license for the 589 Patent for $5,000.  *Id* at Exhibit B.

Unitherm did not respond to Perdue's offer and on March 1,

2005, sued Perdue for patent infringement in the United States District Court for the Northern District of Oklahoma. *Id* at p. 3-4. Perdue was served March 2, 2005. *Id* at 4. On March 3, 2005 Perdue asked this Court to reissue the summons for its October 2004 complaint. *Id.* On March 8, 2005, Unitherm was served in this action. *Id.*

II.  Analysis

Unitherm has moved to dismiss Perdue's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and (2) for lack of personal and subject matter jurisdiction. In the alternative, Unitherm argues that the case should be dismissed under Fed. R. 12(b)(3) or transferred to the Northern District of Oklahoma pursuant to 28 U.S.C. § 1404. Perdue opposes Unitherm's motion to dismiss and has moved to conduct limited jurisdictional discovery.

A.  Motion to Dismiss for Lack of Subject Matter Jurisdiction

The district court should grant a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction only if the material jurisdictional facts are undisputed and the moving party is entitled to judgment as a matter of law. *Evans v. B.F. Perkins Co.,* 166 F.3d 642 (4th Cir. 1999); *Richmond, Fredericksburg & Potomoac R. Co. v. United States*, 945 F.2d 765,

768 (4th Cir. 1991).  In deciding a Rule 12(b)(1) motion, the court may consider exhibits outside the pleadings without converting the motion to one for summary judgment.  *Williams v. United States,* 50 F.3d 299, 304 (4th Cir. 1995).

Unitherm argues that Perdue's complaint should be dismissed for lack of subject matter jurisdiction because Perdue has failed to show that it had a "reasonable apprehension" of litigation.

Declaratory judgment jurisdiction exists only when the totality of circumstances indicates that there is an "actual controversy" between the parties.  *BP Chemical Limited v. Union Carbide Corp.,* 4 F.3d 975, 978 (Fed. Cir. 1993); *Arrowhead Industrial Water, Inc. v. Ecolochem*, 846 F.2d 731,735-736 (Fed. Cir. 1988); *Indium Corp. of America v. Semi-Alloys, Inc.,* 781 F.2d 879, 882-883 (Fed. Cir. 1985); *Cambridge Wire Cloth Co. v. Laitram Corp.*, 679 F.Supp. 515, 517 (D.Md. 1987).  The plaintiff carries the burden of proving an "actual controversy."  *Indium,* 781 F.2d at 883.

In a patent suit, the "actual controversy" requirement is satisfied when a defendant's conduct: 1) creates a "reasonable apprehension" that the declaratory plaintiff will face an infringement suit; and 2) there is actual infringement or conduct with an intent to infringe.  *BP Chemical Limited,* 4 F.3d at 978. The test is an objective one and applied to the facts existing when the complaint is filed.  *Arrowhead,* 846 F.2d at 736.

In determining whether the plaintiff has a "reasonable apprehension" of an infringement suit, courts will consider the totality of the circumstances.  *Id.*  When there is no explicit accusation of infringement, "the cumulative effects of the patentee's actions...[may] indicate an intent to enforce the patent."  *Ion Beam Applications,* 156 F. Supp.2d at 555; *see also Arrowhead,* 846 F.2d at 736.  When there is an express charge of infringement, there is clearly a reasonable apprehension of litigation.  *Capo, Inc. v. Dioptics Medical Products, Inc.,* 387 F.3d 1352 (Fed. Cir. 2004); *Arrowhead,* 846 F.2d 731; *Ion Beam Applications, S.A. v. Titan Corporation,* 156 F. Supp.2d 552, 555 (E.D.Va. 2000).

Perdue alleges that Howard explicitly accused Perdue of infringing the 589 Patent in telephone conversations with General Counsel Herbert Frierichs in the summer of 2004, (Frierichs Affidavit, ¶ 10) and outside counsel Steven Kelber on September 2, 2004.  Kelber Affidavit, ¶ 11.  In his conversation with Kelber, Howard allegedly claimed that Unitherm's patent was valid and that "Perdue knew it was infringing."  Kelber Affidavit, ¶ 11.  Although Howard denies charging Perdue with infringement, Howard Affidavit, ¶ 24, the Frierichs and Kelber affidavits are sufficient to establish subject matter jurisdiction.

B.  Motion to Dismiss for Lack of Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) permits the Court to dismiss a claim for lack of personal jurisdiction.  The plaintiff bears the burden of proving the grounds for jurisdiction by a preponderance of the evidence.  *Carefirst of Maryland v. Carefirst Pregnancy Centers, Inc.,* 334 F.3d 390,396 (4th Cir. 2003); *Mylan Labs., Inc. v. Akzo, N.V.,* 2 F.3d 56, 59-60 (4th Cir. 1993); *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).  When the Court decides a pretrial personal jurisdiction motion without an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction.  *Carefirst,* 334 F.3d at 396; *Combs,* 886 F.2d at 676.  In deciding whether the plaintiff has made the requisite showing, the court must construe all disputed facts and reasonable inferences in favor of the plaintiff.  *Id.*

The exercise of personal jurisdiction over a nonresident defendant must comply with the requirements of Maryland's long-arm statute and the Due Process Clause of the Fourteenth Amendment.  *Carefirst,* 334 F.3d at 396; *Hill v. Brush Engineering*, 383 F.Supp.2d 814, 817 (D.Md. 2005).  Maryland's long-arm statute (Maryland Code Annotated, Courts & Judicial Procedure § 6-103) permits the exercise of personal jurisdiction to the limits set by the Due Process Clause.  *Carefirst,* 334 F.3d at 396; *Hill,* 383 F.Supp.2d at 817; *Mohamed v. Michael*, 279 Md.

653, 370 A.2d 551, 553 (Md. 1977); *Geelhoed v. Jensen*, 277 Md.
220, 224, 352 A.2d 818 (Md. 1976).

A court's exercise of jurisdiction over a nonresident
defendant comports with due process if the defendant has had such
minimum contacts with the forum that subjecting him to
jurisdiction there does not offend traditional notions of fair
play and substantial justice. *Carefirst,* 334 F.3d at 397 (*citing
Int'l Shoe Co. v. Wash.*, 326 U.S. 310 (1945)). The quality and
nature of the defendant's contacts with the state must be such
that it could reasonably expect to be haled into court there.
*Shamsuddin v. Vitamin Research Products,* 346 F.Supp.2d 804, 807
(D.Md. 2004).

The minimum contacts necessary to support jurisdiction
depends on whether the plaintiff asserts general or specific
personal jurisdiction over the defendant. *Id.* If the suit
arises out of defendant's contacts with the state, the court may
exert specific jurisdiction over the defendant. *Helicopteros
Nacionales de Colombia., S.A., v. Hall*, 466 U.S. 408, 414-415
(1984); *Carefirst,* 334 F.3d at 397. In determining whether
specific jurisdiction exists, courts consider: 1) the extent to
which the defendant has purposefully availed itself of the
privilege of conducting activities in the state; 2) whether the
plaintiffs' claims arise out of those activities directed at the
state; and 3) whether the exercise of personal jurisdiction would

be constitutionally reasonable. *Carefirst*, 334 F.3d at 397; *ALS Scan, Inc. v. Digital Service Consultants, Inc.,* 293 F.3d 707 (4th Cir. 2002).

General jurisdiction may be asserted in a suit unrelated to the defendant's contacts with the forum state if the defendant maintains "continuous and systematic" contacts with the state. *Helicopteros*, 466 U.S. 408, 414-415; *Carefirst,* 334 F.3d at 397. However, "the threshold level of minimum contacts to confer general jurisdiction is significantly higher than for specific jurisdiction." *ESAB Group, Inc. v. Centricut, Inc.,* 126 F.3d 617, 623 (4th Cir.1997); *CapitalSource Finance LLC v. B & B Contractors, Inc.*, 2005 WL 1025953, slip op. (D. Md. 2005).

A court must look at the facts of each case to determine whether a defendant's activities within a state are continuous and systematic. *LSI Industries v. Hubbell Lighting, Inc.,* 232 F.3d 1369, 1375 (Fed. Cir. 2000). Single or isolated activities in a state are not enough to subject a corporation to general jurisdiction. *International Shoe,* 326 U.S. at 317; *Nichols v. G.D. Searle & Company,* 991 F.2d 1195, 1199 (4th Cir. 1993). The contacts between the defendant and the forum state must be "extensive, continuous and systematic. *Tyler v. Gaines Motor Lines, Inc.*, 245 F.Supp.2d 730 (D. Md. 2003).

In *Helicopteros* the Supreme Court found that the defendant corporation had not established continuous and systematic

8

contacts with Texas even though it sent its chief executive officer to the state for a contract-negotiation session; accepted checks drawn on a Texas bank; purchased helicopters, equipment, and training services in Texas; and sent personnel to Texas for training.  466 U.S. 408.  In *Nichols v. Searle,* the Fourth Circuit found that a corporation that employed 13 Maryland residents as sales representatives; employed one Marylander as a district manager; possessed company cars registered in Maryland; held company meetings in Maryland; had $9-13 million in annual sales in Maryland; had a research contract at one time with a Maryland firm; and did some of its purchasing in Maryland, had not established systematic and continuous contacts with the District.  991 F.2d 1195; *see e.g. ESAB Group, Inc. v. Centricut, Inc.,* 126 F.3d 617 (4th Cir. 1997)(no general jurisdiction where defendant had 26 customers in the forum state; had purchased $10,000-$20,000 in parts at one time in the forum; and had advertised once in a trade publication with national circulation); *Lee v. Walworth Valve Co.,* 482 F.2d 297 (4th Cir. 1973)(general jurisdiction found where defendant has $200,000 in annual sales in forum state; sales representatives spent 80 days a year in the district; and where there was no other state that might provide a more likely forum); *Ratliff v. Cooper Labs, Inc.,* 444 F.2d 745 (4th Cir. 1971)(advertising and employing salesmen in forum state insufficient for general jurisdiction).

1.  Specific Jurisdiction

Unitherm's activities which relate to the alleged patent infringement are limited to telephone conversations and correspondence.

Correspondence and phone calls are insufficient to establish the minimum contacts that satisfy due process. *Cape v. von Maur,* 932 F.Supp. 124, 128 (D. Md. 1996); *Leather Masters v. Gampier Ltd.,* 836 F. Supp. 328, 331 (D. Md. 1993).  In patent litigation, "sending...letters threatening patent infringement litigation is not sufficient to confer personal jurisdiction." *Silent Drive, Inc. v. Strong Industries,* 326 F.3d 1194 (Fed. Cir. 2003); *see also Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.,* 148 F.3d 1355 (Fed. Cir. 1998).

Accordingly, Unitherm's communications with Perdue regarding 589 Patent are insufficient to establish specific jurisdiction.

2.  General Jurisdiction

Perdue also argues that Unitherm's contacts with Maryland were continuous and systematic and therefore establish general jurisdiction.  In support of this contention, Perdue alleges that: 1) Unitherm sold four ovens to Dietz & Watson ("D&W") in 2003 for use in D&W's Baltimore processing plant (Monk Affidavit,

¶ 6); 2) Unitherm *likely* installed D&W's ovens in Baltimore
(Ferrell Affidavit, ¶ 10); 4) Unitherm *likely* conducts regular
business in Maryland (Monk Affidavit, ¶ 9 [1]); 5) Howard and
Unitherm sales agent Michael Adkins contacted Corporate
Purchasing Manager Mark Beachford in Maryland in March and April
2004 offering to sell Perdue a Unitherm oven (Beachboard
Affidavit, ¶¶ 6-10; and 6) Unitherm advertised in *Meat and
Poultry* magazine*,* which Perdue received in Maryland, in 1998.
Mot. to Dismiss, Exhibit 15.

It is undisputed that Unitherm does not maintain a place of
business in Maryland; owns no property in Maryland; has no
employees or agents in Maryland; has not paid taxes in Maryland;
and has not maintained any bank accounts in Maryland.  Even
assuming that Unitherm was aware that D&W planned to install the
Unitherm ovens in Baltimore (which Unitherm disputes), D&W is a
Pennsylvania corporation; the sales contracts were negotiated
with D&W personnel in Philadelphia; all invoices and payments
relating to the transaction were made through D&W headquarters in
Philadelphia; and the ovens were shipped to Philadelphia.

---

[1] Perdue counsel Charles Monk asserts that D&W's Chief
Operating Officer, Chris Eni ("Eni"), informed him that Unitherm
was aware that the ovens were bound for Baltimore and that "there
can be no doubt that Unitherm regularly conducts business in
Maryland."  However, Monk does not relate what business Unitherm
conducts in Maryland and has no personal knowledge of any of
these allegations.  Eni has declined to supply Perdue with
business records or provide an affidavit relating to this matter.

Although Perdue alleges that it is *likely* that Unitherm installed the ovens, Howard's sworn affidavit contends that D&W personnel were responsible for installation.  Howard Supplemental Affidavit, ¶ 6.  Although Perdue asserts that it is *likely* that there is an ongoing parts and service contract, Perdue offers no factual basis for this assertion, and Howard claims that Unitherm has made only three sales of parts to D&W and that the parts were delivered to Philadelphia.  Howard Supplemental Affidavit, ¶ 7.  Although Perdue alleges that Unitherm generally does business in Maryland, Perdue alleges no other sales of Unitherm products or services in the District, and Howard denies the sale of Unitherm products in Maryland.  Howard Affidavit, ¶ 4.  Although Perdue claims that Unitherm advertised in Maryland, this has been limited to single phone calls by Howard and Adkins and the placement of an advertisement in a national trade publication in 1998.

Therefore, Perdue's claim that Unitherm maintains systematic and continuous contacts with Maryland is largely based on a 2003 sale and delivery of equipment to a Philadelphia based firm. Perdue's factual allegations do not establish that Unitherm maintains extensive, continuous and systematic contacts with Maryland.  Accordingly, Unitherm lacks the requisite minimum contacts with the District to satisfy due process.

C.  Perdue's Motion to Conduct Jurisdictional Discovery

Perdue has requested an order authorizing limited jurisdictional discovery so that it may demonstrate that Unitherm has an ongoing, substantial business relationship in Maryland with D&W and that Unitherm solicits business in Maryland.

Jurisdictional discovery is appropriate when the existing record is inadequate to support personal jurisdiction and a party demonstrates that it can supplement its jurisdictional allegations through discovery.  *Carefirst,* 334 F.3d at 403; *Trintec Industries, Inc. v. Pedre Promotional Products, Inc.,* 395 F.3d 1275 (Fed. Cir. 2005)(case remanded when the record suggested that plaintiff made a prima facie showing of personal jurisdiction but the evidence was sparse and contained gaps); *Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.,* 395 F.3d 1315 (Fed. Cir 2005)(case remanded with instructions to allow jurisdictional discovery because "plaintiff's discovery request was highly relevant and ... additional facts are likely available to assist the court in making the jurisdictional determination").

If discovery would not alter the analysis of personal jurisdiction, a court is within its discretion in deciding that a plaintiff has failed to establish that discovery is warranted. *Carefirst,* 334 F.3d at 403; *Fleetwood v. B.C.E., Inc.,* 2004 WL 903754, slip op. (D. Md. 2004).

As Perdue's contemplated discovery would focus on the specifics of Unitherm's sale of four ovens to D&W, it is unlikely that discovery would alter the Court's analysis of personal jurisdiction.

Further discovery on this limited sale, therefore, is unlikely to alter the Court's analysis.  Accordingly, Perdue's motion to conduct jurisdictional discovery will be denied.


October 19, 2005                          /s/
Date                            William D. Quarles, Jr.
                                United States District Judge